**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Nelson Adony Romero-Amaya,<br>Petitioner,<br>v.<br>Luis Rosa, Jr.,<br>Respondent. | No. CV-26-02589-PHX-DWL (JZB)<br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE DOMINIC W. LANZA, UNITED STATES DISTRICT JUDGE**:

Pending before the Court is Petitioner's "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241."[1] (Doc. 1.)

## I. SUMMARY OF CONCLUSION.

In February 2024, Petitioner entered the United States without inspection and was detained by Immigration and Customs Enforcement ("ICE"). In September 2024, Petitioner was granted a bond hearing pursuant to 8 U.S.C. § 1226(a), but the Immigration Judge ("IJ") denied bond. Petitioner has now been in custody for 30 months. Given that Petitioner has not received a bond hearing in almost 22.5 months, the Court finds that he is entitled to such a hearing. Therefore, it is recommended that the Petition be granted as to Petitioner's request for a bond hearing.

//

[1] This action was referred to this Court "for further proceedings and a report and recommendation." (Doc. 4 at 3.)

## II. BACKGROUND.

Petitioner is a native and citizen of El Salvador.[2] (Doc. 1 at 17, 28.) On February 13, 2024, Petitioner entered the United States without inspection. (Doc. 10-2 at 1.) On February 21, 2024, Petitioner was detained by ICE. (*Id.*) Petitioner, to date, remains in custody. (Doc. 1 at 2); (doc. 10 at 3.)

In September 2024, Petitioner was granted a bond hearing. (Doc. 1 at 2.) On October 2, 2024, an IJ denied bond, concluding Petitioner was a flight risk. (*Id.* at 13.) The record suggests Petitioner has not received any bond hearings since this date. *See generally* (doc. 1); (doc. 10.)

On May 20, 2025, an IJ denied Petitioner's application for asylum. (Doc. 1 at 28.) On December 31, 2025, the Board of Immigration Appeals ("BIA") granted Petitioner's appeal and remanded Petitioner's case for further proceedings. (*Id.* at 29.) On March 6, 2026, Petitioner was ordered removed by the IJ. (Doc. 10-3 at 1.) On March 30, 2026, Petitioner appealed this decision to the BIA, where the case remains pending. (Doc. 10-1 at 1); (doc. 10 at 2); (doc. 1 at 5.)

On April 15, 2026, Petitioner filed the instant Petition. (Doc. 1 at 1.) In his Petition, Petitioner asserts that his prolonged detention is in violation of: (1) 8 U.S.C. § 1231; and (2) the Due Process Clause of the Fifth Amendment. (*Id.* at 6.) Petitioner requests immediate release or, in the alternative, a bond hearing under 8 U.S.C. § 1226. (*Id.* at 7.)

On May 11, 2026, the Response was filed. (Doc. 10-1 at 4.) In his Response, Respondent asserts that Petitioner, detained under 8 U.S.C. § 1226(a), is precluded from relief under Ninth Circuit precedent. (Doc. 10-2 at 2–4.)

On July 24, 2026, Petitioner filed a "Motion to Extend Reply Deadline" with an

---

[2] Petitioner's I-213 record lists him as a native and citizen of Mexico, apparently because Petitioner claimed to be a Mexican citizen when arrested. (Doc 10-2 at 1, 3); (doc. 11 at 4). But the record strongly suggests Petitioner is a native and citizen of El Salvador. *See* (Doc. 1 at 17) (Petitioner lists place of birth as "Salvador"); *see also* (*id.* at 28–29) (appellate immigration judge describes Respondent as "a native and citizen of El Salvador" and notes that he "has two minor children in El Salvador").

Moreover, the I-213 record and several other documents cited by both parties list Petitioner's name as "Danilo Valdemar Sipac Ramirez." (Doc. 1 at 13, 26–27, 30); (doc. 10-1 at 1); (doc. 10-2 at 1); (doc. 10-3 at 1.) This was a false name provided by Petitioner after he was detained. (Doc. 11 at 4.)

attached reply. (Doc. 11.) The Court granted this motion. (Doc. 12.)

## III. 28 U.S.C. § 2241 WRIT OF HABEAS CORPUS.

The District Court is empowered to issue a Writ of Habeas Corpus when an individual is held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ" makes clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'") (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807)); *cf. In re Kaine*, 55 U.S. (14 How.) 103 (1852) (applying the writ of habeas corpus in the immigration context). The Supreme Court has made clear that § 2241 applies to noncitizens[3] challenging their immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Because Petitioner challenges only his prolonged civil detention, the Court has jurisdiction to address the instant Petition. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order[.]").

//

//

---

[3] Undersigned shall use the term 'noncitizen' unless a quoted statute or court decision uses the term 'alien.' This usage is congruent with the Ninth Circuit Court of Appeals' precedent, such as *Avilez v. Garland*, which stated:

> This opinion uses the term noncitizen unless quoting language from the immigration statutes or past opinions containing the term alien. There are two reasons behind this choice. First, use of the term noncitizen has become a common practice of the Supreme Court[.] Second, even if that were not the case, careful writers avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing. The word alien can suggest "strange," "different," "repugnant," "hostile," and "opposed," . . . while the word noncitizen, which is synonymous, . . . avoids such connotations. Thus, noncitizen seems the better choice.

*Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023) (cleaned up).

## IV. DISCUSSION.

### A. Statutory Basis for Petitioner's Detention.

A complex statutory scheme governs the detention of noncitizens during removal proceedings. *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023). "A noncitizen's place within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Id.* (cleaned up). Here, Petitioner argues that Respondent has violated 8 U.S.C. § 1231. (Doc. 1 at 6.) Respondent argues that Petitioner is detained under 8 U.S.C. § 1226(a). (Doc. 10 at 2.) The Court agrees with Respondent.

Detention is governed by § 1231 when a noncitizen is subject to a final order of removal. *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("[The statute] governs the detention, release, and removal of individuals 'ordered removed.'"); 8 U.S.C. § 1231(a)(1)(B)(i) (stating that the removal period for a detained noncitizen generally begins on "[t]he date the order of removal becomes administratively final"). When a removal order is pending before the BIA, it is not administratively final. *See* 8 U.S.C. § 1241.1(a) (stating that an IJ's removal order becomes final "[u]pon dismissal of an appeal by the Board of Immigration Appeals"). Here, Petitioner's appeal before the BIA is pending. *See* (doc. 1 at 5); (doc. 10 at 2.) Thus, Petitioner is not subject to a final order of removal and § 1231 does not apply.

Instead, Petitioner is subject to detention under § 1226, which provides "the general process for arresting and detaining aliens who are present in the United States and eligible for removal."[4] *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Specifically, Petitioner is detained under § 1226(a), which "sets out the default rule" that the government "may issue a warrant for the arrest and detention of an alien 'pending a

---

[4] Respondent concedes that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225. (Doc. 10 at 2.) Indeed, it appears that Petitioner was given a bond hearing pursuant to § 1226(a), (doc. 1 at 13), and numerous courts have held that "a person placed in full removal proceedings under § 1226 cannot thereafter be detained under § 1225." *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025).

decision on whether the alien is to be removed from the United States.'"[5] *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1226(a)). A noncitizen detained under § 1226(a) "may request a bond hearing before an IJ at any time before a removal order becomes final." *Rodriguez Diaz*, 53 F.4th at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk, the IJ will order his release." *Id.* (cleaned up). Detainees seeking bond at a § 1226(a) hearing may be represented by counsel, submit evidence in support of their claims, and appeal an adverse decision to the BIA. *Id.*

Under the implementing regulations of § 1226(a), a detainee who has received a bond hearing may only be granted a second bond hearing "upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e). The Supreme Court has held that the statute does not otherwise require periodic bond hearings. *Jennings*, 583 U.S. at 306–07 (rejecting the Ninth Circuit's interpretation that § 1226(a) included an implicit six-month limit to the length of detention without a bond hearing).

**B. Due Process.**

Petitioner argues he is entitled to release or a second bond hearing as a matter of due process. (Doc. 1 at 6.) The Due Process Clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. The Court's due process analysis proceeds in two steps: "[F]irst[, the Court] ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so[, the Court] ask[s] whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

---

[5] Petitioner is not subject to mandatory detention under § 1226(c) because Petitioner has no known criminal record. (Doc. 10-2 at 3) ("Criminal History: None known."); *Rodriguez Diaz*, 53 F.4th at 1197 (§ 1226(c) governs "individuals who have committed certain enumerated offenses or who have been involved in drug trafficking or terrorist activities").

Respondent concedes that Petitioner has a liberty interest. *See* (doc. 10 at 3.) In evaluating this liberty interest, Respondent correctly notes that the Court is bound by the Ninth Circuit's holding in *Rodriguez Diaz*. (*Id.* at 2.) There, the court was confronted with a case like Petitioner's: a § 1226(a) detainee without materially changed circumstances sought a second bond hearing after 14 months of continued detention. *Rodriguez Diaz*, 53 F.4th at 1194–95. The Ninth Circuit held that "§ 1226(a)'s procedures satisfy due process, both facially and as applied to [the petitioner]." *Rodriguez Diaz*, 53 F.4th at 1213. But the court noted that its holding does "not foreclose all as-applied challenges to § 1226(a)'s procedures." *Id.* Thus, the Court will proceed with an analysis of Petitioner's as-applied challenge.

Courts in the Ninth Circuit, including the court in *Rodriguez Diaz*, have evaluated requests by § 1226 detainees for additional bond hearings using the three-factor test of *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz*, 53 F.4th at 1206 (applying *Mathews* and noting its use in other circuits); *see also Chiapot Perez v. Immigr. & Customs Enf't*, No. 26-CV-2393-JES-AHG, 2026 WL 1333755, at *1–3 (S.D. Cal. May 13, 2026) (applying *Mathews* for § 1226(a) detainee who received a prior bond hearing); *Ortuno-Perez v. ICE Field Off. Dir.*, No. 2:23-CV-344-BHS-DWC, 2023 WL 5807305, at *4–6 (W.D. Wash. Aug. 1, 2023), *report and recommendation adopted*, No. C23-0344 BHS, 2023 WL 5802516 (W.D. Wash. Sept. 7, 2023) (same). Respondent has addressed the three *Mathews* factors in his Response. (Doc. 10 at 2–3.)

Therefore, the Court will apply the *Mathews* test. Under the *Mathews* test, the Court considers: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

*i. Private Interest.*

The first *Mathews* factor—the private interest—weighs in favor of Petitioner.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)); *Rodriguez Diaz*, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'") (citing *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011)). Here, Petitioner has been detained for over 30 months, far longer than the period considered "prolonged" in *Rodriguez Diaz*. *See Rodriguez Diaz*, 53 F.4th at 1207 ("[W]e will assume that his [18-month] detention qualifies as 'prolonged' in a general sense.") (citations omitted); *see also Chiapot Perez*, 2026 WL 1333755, at *1–2 (S.D. Cal. May 13, 2026) (first factor favors petitioner detained for less than a year who received a prior bond hearing); *Alvarez v. Beccerra*, No. 1:26-CV-00008 DC SCR, 2026 WL 295552, at *4–5 (E.D. Cal. Feb. 4, 2026), *report and recommendation adopted*, No. 1:26-CV-00008 DC SCR, 2026 WL 1697106 (E.D. Cal. June 11, 2026) (same for a petitioner detained 18 months); *Singh v. United States Immigr. & Customs Enf't*, No. 2:22-CV-00548-BHS-TLF, 2023 WL 4627819, at *9 (W.D. Wash. Mar. 17, 2023), *report and recommendation adopted*, No. 2:22-CV-00548-BHS, 2023 WL 4624478 (W.D. Wash. July 19, 2023) (same for a petitioner detained 26 months).

Respondent cautions that Petitioner's liberty interest is weakened by the availability of a prior bond hearing, Petitioner's appeals, and the IJ's valid order of removal. (Doc. 10 at 3); *see Alvarez*, 2026 WL 1697106, at *4 (noting that "the strength of [a] petitioner's private interest is somewhat diminished" by a prior bond hearing); *see also Ortuno-Perez*, 2023 WL 5807305, at *5 ("[T]he court must also consider the process [a] petitioner received during the time he was detained, the further process available to him, and 'the fact that his detention was prolonged due to his decision to challenge his removal order.'") (quoting *Rodriguez Diaz*, 53 F.4th at 1208). Indeed, Petitioner's interest is diminished by these factors. However, Petitioner's bond was denied almost 22.5 months ago, (doc. 1 at 13), and Petitioner's latest appeal was filed only four months ago. (Doc. 10-1 at 1.) So, most of Petitioner's detention—almost 18 months—occurred after Petitioner's latest bond

hearing and before Petitioner sought appellate review of the removal order.[6] *See Cruz-Olvera v. Henkey*, No. 2:26CV00218-CDS-EJY, 2026 WL 658917, at *5 (D. Nev. Mar. 6, 2026) (holding that even when "the strength of [a petitioner's] private interest is diminished" due to a prior bond hearing, three months without a hearing is enough for the first *Mathews* factor to favor the petitioner); *see also Vielma-Benavides v. Noem*, No. CV-26-01598-PHX-RM, 2026 WL 1703731, at *3 (D. Ariz. June 12, 2026) ("[T]he private interest in freedom from detention is so weighty that even detention of less than three months without § 1226(a) process means that the first *Mathews* factor must cut in a detainee's favor.").

Overall, the first *Mathews* factor weighs in Petitioner's favor. *See Alvarez*, 2026 WL 295552, at *4 ("Still, on balance, given that nearly a year has passed since [the petitioner's] custody redetermination hearing, [the first *Mathews* factor] favors a finding that [the] petitioner's private liberty interest is implicated by her ongoing detention.").

*ii. Risk of Erroneous Deprivation.*

The second *Mathews* factor—the risk of erroneous deprivation and the probable value of additional safeguards—weighs in favor of Respondent. "Generally, where a noncitizen has been afforded some process, 'the risk of an erroneous deprivation of his liberty interest and the value of additional procedures is very low unless he can demonstrate a material change in circumstances since his last bond hearing.'" *Chiapot Perez*, 2026 WL 1333755, at *3 (quoting *Rubin v. United States Immigr. & Customs Enf't Field Off. Dir.*, No. 2:24-CV-00260-TL-TLF, 2024 WL 3431914 (W.D. Wash. June 28, 2024), *report and recommendation adopted*, No. 2:24-CV-00260-TL-TLF, 2024 WL 3431163 (W.D. Wash. July 16, 2024)); *Rodriguez Diaz*, 53 F.4th at 1209 (noting that the risk of erroneous deprivation is low when a § 1226(a) petitioner has "the right to seek an additional bond hearing if his circumstances materially change."). Here, Petitioner received a bond hearing in which he was represented by counsel. (Doc. 1 at 13.) Petitioner has the right to seek an

---

[6] The Court is also mindful that Petitioner "should not be effectively punished through indefinite detention for exercising [his] right to appeal [a] removal order." *Yuehui Chen v. Noem*, No. 5:26-CV-00397-SSS-DTB, 2026 WL 425694, at *6 (C.D. Cal. Feb. 13, 2026).

additional bond hearing upon a showing that his circumstances have materially changed. 8 C.F.R. § 1003.19(e). But Petitioner has not sought such a hearing, nor has he presented any evidence to the Court that his circumstances have changed.[7] *See generally* (doc. 1.) Thus, the Court concludes that the risk of erroneous deprivation is low. *See Rodriguez Diaz*, 53 F.4th at 1209–10 (holding that the second *Mathews* factor weighs against § 1226(a) detainee absent a showing of materially changed circumstances); *Manuel de la Torre-Duran v. Blanche*, No. 26-CV-3129 JLS (MSB), 2026 WL 1998873, at *3 (S.D. Cal. July 10, 2026) (same); *Hernandez v. Bondi*, No. 26-CV-2676-JES-DDL, 2026 WL 1471891, at *3 (S.D. Cal. May 26, 2026) (same); *Espinoza v. Wofford*, No. 1:24-CV-01118-SAB-HC, 2025 WL 1556590, at *12–13 (E.D. Cal. June 2, 2025) (same).

But in evaluating the risk of erroneous deprivation, "courts may [also] take into consideration when Petitioner's last bond hearing was held[.]" *Chiapot Perez*, 2026 WL 1333755, at *3. Here, Petitioner has not received a bond hearing in more than 22 months, which somewhat increases the probable value of an additional hearing. *See id.* (suggesting that the second *Mathews* factor may favor Petitioner when more 18 months have passed since the last bond hearing); *see also Sahota v. Allen*, No. 20-CV-03180-WHO, 2020 WL 2992872, at *6 (N.D. Cal. June 4, 2020) (granting bond hearing in part because 18 months had passed since previous bond hearing); *Velasco Lopez v. Decker*, 978 F.3d 842, 853 (2d Cir. 2020) ("'[A]s the period of . . . confinement grows,' so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention.") (quoting *Zadvydas*, 533 U.S. at 701). However, "[w]hile the length of Petitioner's detention tends to tip this factor in Petitioner's favor[,]" the second factor still weighs against Petitioner when he "does not present any additional information demonstrating a material change in circumstances." *Manuel de la Torre-Duran*, 2026 WL 1998873, at *3; *Chiapot Perez*, 2026 WL 1333755, at *3 (finding second factor weighed against a petitioner when the time between hearings was six months and the petitioner had "not articulated any changed circumstances"). Overall, the second *Mathews* factor still

[7] Neither party has provided evidence showing why the IJ deemed Petitioner a flight risk at the September 2024 bond hearing. *See generally* (doc. 1); (doc. 10).

weighs in Respondent's favor.

*iii. Government Interest.*

The third *Mathews* factor—the government's interest—weighs in favor of Petitioner. "[T]he government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore v. Kim*, 538 U.S. 510, 518 (2003)). This interest is stronger when the noncitizen has a criminal record. *See id.* ("The government has an obvious interest in protecting the public from dangerous criminal aliens.") (cleaned up); *Herrera v. Mayorkas*, No. C24-1933-JNW-MLP, 2025 WL 2382093, at *7 (W.D. Wash. May 19, 2025), *report and recommendation adopted*, No. C24-1933-JNW-MLP, 2025 WL 2380669 (W.D. Wash. Aug. 15, 2025) (finding that the third *Mathews* factor weighed against a petitioner whose "criminal history demonstrates a danger to the community"); *Ortuno-Perez*, 2023 WL 5807305, at *5 (same).

However, the government interest at stake here is "the ability to detain Petitioner *without providing him with another bond hearing*, not whether the government may continue to detain him" in general. *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762 (N.D. Cal. 2019) (emphasis in original); *see Zerezghi v. United States Citizenship & Immigr. Servs.*, 955 F.3d 802, 810 (9th Cir. 2020) (noting that the focus of the third *Mathews* factor is "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail" rather than "[t]he government interest in immigration enforcement in general"); *see also Chiapot Perez*, 2026 WL 1333755, at *3 ("[I]n the context of whether to provide Petitioner with another bond hearing or not, [the government's interest in immigration enforcement] may be diminished."); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025) ("The government's only legitimate interests in holding an individual in immigration detention, at the expense of the federal taxpayer, can be to prevent danger to the community or to ensure the noncitizen's appearance at . . . [a] removal proceeding.").

Moreover, "the purpose of a bond hearing is to inquire whether [Petitioner] represents a flight risk or danger to the community." *Jimenez v. Wolf*, No. 19-CV-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020).

The cost of providing Petitioner another bond hearing is low. *See Alvarez*, 2026 WL 295552, at *6 (noting the government's interest is mitigated by "the low fiscal and administrative burdens associated with a second bond hearing"); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The effort and cost required to provide Petitioner with procedural safeguards is minimal and indeed was previously provided in his case."); *Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."); *cf. Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (noting that "[t]he costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person").

Here, Petitioner has no criminal record.[8] (Doc. 10-2 at 3.) If Petitioner is a flight risk or a danger to the community, this will come to light at the bond hearing he seeks. Considering the minimal cost of conducting a second bond hearing, the Court concludes that the government's interest is low. *See Lopez Reyes*, 362 F. Supp. 3d 762, 777 ("Considering . . . the minimal cost of conducting a bond hearing, and the ability of the IJ to [determine] whether Petitioner's continued detention is justified . . . the government's interest is not as weighty as Petitioner's.").

**C. Remedy.**

In brief, the first and third *Mathews* factors favor Petitioner, while the second factor favors Respondent. The Court concludes that Petitioner's continued detention without an individualized bond hearing would violate his Fifth Amendment due process rights. Thus,

---

[8] This contrasts with the petitioner in *Rodriguez Diaz*, who had "a fairly lengthy criminal record." *Rodriguez Diaz*, 53 F.4th at 1194.

the Court will recommend that Petitioner be granted an individualized bond hearing before a neutral IJ.

Although Petitioner asks to be released immediately, (doc. 1 at 7), the Court finds this remedy inappropriate because it is possible that Petitioner is a flight risk or a danger to the community. The purpose of a bond hearing is to determine whether Petitioner may safely be released. *Jimenez*, 2020 WL 510347, at *3; *see Sahota*, 2020 WL 2992872, at *6 (ordering bond hearing but denying request for immediate release); *Lopez Reyes*, 362 F. Supp. 3d at 778 (same).

At the bond hearing, Respondent bears the burden of proving that Petitioner is a danger or flight risk by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011); *Vielma-Benavides*, 2026 WL 1703731, at *4 (noting that while the *Rodriguez Diaz* court does not preclude placing the burden of proof on the noncitizen, "the individualized circumstances of [a petitioner's] case [may] warrant additional procedures"). Additionally, "[i]n the event Petitioner is 'determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond,' the [IJ] should consider Petitioner's financial circumstances and alternative conditions of release. *Ding v. Noem*, No. 1:26-CV-01217-DJC-SCR, 2026 WL 776029, at *3 (E.D. Cal. Mar. 19, 2026) (quoting *Hernandez*, 872 F.3d at 1000).

On July 27, 2026, Petitioner filed a "Motion for Temporary Restraining Order and Preliminary Injunction." (Doc. 13.) Since the Court recommends granting relief to Petitioner in the form of a bond hearing, Petitioner's motion should be denied as moot.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER RECOMMENDED** that Petitioners' request for immediate release be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 13) be **DENIED AS MOOT**.

**IT IS FURTHER RECOMMENDED** that Petitioner be provided an individualized bond hearing within **FOURTEEN (14) DAYS** if this Report and Recommendation is adopted. This bond hearing shall comply with the procedural requirements set out in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). The government shall bear the burden of proving that Petitioner is a danger or flight risk by clear and convincing evidence. Additionally, the IJ should consider Petitioner's financial situation and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017). In the alternative, the government may release Petitioner under appropriate conditions of release.

**IT IS FURTHER RECOMMENDED** that the government shall file a status report with the Court regarding the bond hearing and whether the Petitioner was released within **FOURTEEN (14) DAYS** if this Report and Recommendation is adopted.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 6, 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 17th day of August, 2026.

Honorable John Z. Boyle
United States Magistrate Judge